IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| SHAWNDA Y. MARTIN KING, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 5:24-CV-058-H-BQ |
| | § | |
| LUBBOCK ISD, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND**
**RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**[1]

Plaintiff Shawnda Y. Martin King has worked for Lubbock Independent School District (LISD) in several capacities over the years. In May 2023, she was selected as principal for one of LISD's schools. But according to King, LISD wrongfully terminated her from the position before the school year began. This lawsuit arises from that incident.

Defendant Zach Brady, who was president of the LISD Board of Trustees at the time of the incident, now moves to dismiss King's legal malpractice and Texas Deceptive Trade Practices Act (DTPA) claims against him under Rules 12(b)(1) and (b)(6). ECF No. 13. The undersigned finds that King has asserted claims against Brady only in his official capacity, which amount to suit against LISD. Because LISD possesses governmental immunity, the undersigned concludes the Court lacks subject-matter jurisdiction over King's claims against Brady. Moreover, granting King leave to amend would be futile. The undersigned therefore recommends that the United States District Judge grant Brady's Motion to Dismiss under Rule 12(b)(1) and dismiss Brady as a defendant, without prejudice.

---

[1] In accordance with *Special Order 3-251*, this case was automatically referred for pretrial management. ECF No. 3.

I.  Background

A. King's Factual Allegations[2]

To evaluate Brady's Motion to Dismiss, the Court accepts as true the following narrative from King's Complaint.[3] *See Richardson v. Axion Logistics, L.L.C.*, 780 F.3d 304, 306 (5th Cir. 2015). At the time of the events giving rise to her Complaint, King was an employee at LISD. Compl. 2, ECF No. 1. In May 2018, the principal at the school at which King was working, Drue Coleman, encouraged King to apply for an assistant principalship. *Id.* King advised Coleman that she "did not have [her] principal certificate," but Coleman encouraged her to apply regardless. *Id.*

King was awarded a position and served as an assistant principal for five years at various LISD schools. *Id.* at 2–3. She then applied to be a principal at two LISD elementary schools. *Id.* at 3. After applying, she learned that a principalship would become available at Talkington School for Young Women Leaders (Talkington). *Id.* In April 2023, Executive Principal Damon McCall visited with her and stated that King "would be the perfect principal for Talkington" because the school "needs a person that reflect[s] the minority, single-gendered campus." *Id.* So King applied for the Talkington position. *Id.* at 4.

---

[2] The Court focuses its recitation on the factual allegations against Defendant Brady that are relevant to deciding his Motion to Dismiss.

[3] King's Complaint is difficult to decipher. This is in part due to her failure to comply with Rule 8, which provides that a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief" and "a demand for the relief sought." FED. R. CIV. P. 8(a)(2), (3). King's "complaint is anything but short and plain. It includes . . . extraneous matters that do not belong in a pleading," such as factual details that do not appear to be relevant to her claims and voluminous attachments. *Castillo v. Equifax Info. Servs., LLC*, No. 4:18-CV-557-A, 2018 WL 11430866, at *1 (N.D. Tex. Sept. 18, 2018); *see* ECF No. 1. King also failed to state the specific relief she seeks. *See* ECF No. 1. King merely provides a chronological summary of events, along with more than 200 pages of attachments—many of which are not referenced in her Complaint—which requires Defendants, and the Court, to guess as to the claims she is asserting against each Defendant and the facts that support each claim.

On April 28, 2023, King interviewed for the Talkington principalship. *Id.* And on May 11, the LISD Board of Trustees voted and named King the new principal at Talkington. *Id.* She commenced some duties at Talkington. *Id.* But a few days later, on May 30, Maximilian Flores, Director of Human Resources for LISD, questioned King about whether she possessed her principal certification. *Id.* at 5. King informed Flores, like she had told Ms. Coleman, that she did not have her certification. *Id.* Flores advised King she would need to obtain it "by July" 2023. *Id.*

On June 1, however, Flores asked King to resign. *Id.* at 6. When King refused, Flores told King she would be terminated. *Id.* "That evening, [King] received a Notice of Suspension . . . ." *Id.* at 7 (emphasis omitted). The Notice provided that if King "resigned by Monday, June 5 no further actions would be taken against [her], but if [she] did not, on June 15 Lubbock ISD would motion to the Board of Trustees" to terminate her contract. *Id.* (cleaned up and emphasis omitted). The Notice further: (1) prohibited King from speaking with coworkers and entering LISD campuses without permission; (2) stated that she would be removed from LISD email lists; and (3) required King to return LISD equipment and property. *Id.*

King apparently refused to resign, and on June 15 she attended the Board of Trustees meeting. *Id.* at 8. "During [the] closed session, [the] Board of Trustees president, Zach Brady, along with superintendent Dr. Kathy Rollo requested to speak with" King and her husband "alone." *Id.* King did not know that Brady was an attorney. *Id.* In King's view, Dr. Rollo "should never have allowed him to conduct a meeting without [King] having an attorney present." *Id.* Brady offered to permit King "to take the Texas Principal Examination as soon as possible" and promised that if she passed, she would "get to be an administrator somewhere in the district." *Id.* He cautioned King, however, that if she did not pass the exam she would be

3

demoted to a teaching position "with teachers' pay." *Id.* King accepted the offer and ostensibly signed paperwork acknowledging her acceptance. *Id.*

Although King's Complaint continues in detail, she pleads no other facts involving Brady. *See id.* at 9–17. Based on the foregoing, and liberally construing King's assertions, she appears to assert claims against Brady for legal malpractice and violation of the DTPA. *See id.* at 8. She does not specify—*in her Complaint*—the type of damages she seeks.[4] *See id.* at 1–17.

### B. Parties' Arguments

Brady maintains that dismissal of all King's claims against him is appropriate. Def.'s Br. in Supp. of Mot. to Dismiss 19, ECF No. 14 [hereinafter Mot.]. Initially, Brady argues that King asserts claims against him solely in his official capacity as former president of the LISD Board of Trustees and current Board of Trustees member. *Id.* at 7. Claims against an officer in his official capacity represent a suit against the governmental entity, i.e., LISD. *Id.* As such, Brady contends that King fails to state a claim for legal malpractice and under the DTPA—the only causes of action, according to Brady, she asserts against him—because "school districts are [generally] immune from tort actions." *Id.* at 1, 4.

Regardless, Brady alleges that King has not pleaded adequate facts to state claims for legal malpractice and under the DTPA. *Id.* at 1, 4–7. Specifically, Brady avers that King's pleadings do not reflect that he "was serving as her attorney"; thus, King cannot state a malpractice claim. *Id.* at 5–6. As to her DTPA claim, Brady claims that King was not a consumer, as that term is defined under the statute, nor did he "engage with [King] for any 'service.'" *Id.* at 7. In Brady's view, "[t]he DTPA is not applicable, and [King's] claim should .

---

[4] In one of her responses to the Motion to Dismiss, however, King references monetary damages. ECF No. 19, at 4.

4

. . be dismissed." *Id.* Finally, Brady asserts that to the extent King brings claims against him in his individual capacity, he is entitled to qualified immunity. *Id.* at 7–9.

King filed two documents roughly a week after Brady's motion that the Court construes as her response. *See* ECF Nos. 18, 19. The first document, titled "Response to Lubbock ISD's Answer . . . Oppose the Motion to Dismiss Claims of LISD," purports to address her claims against LISD—not Brady. ECF No. 18 (cleaned up and emphasis omitted) [hereinafter 1st Resp.]. King does, however, reference "[t]he Lubbock ISD Board of Trustee President['s]"—i.e., Brady—alleged negligence. *Id.* at 6–8. The second, titled "Opposed Motion to Dismiss (Brief) . . . Oppose the Motion to Dismiss Claims of the Defendants," likewise discusses claims not asserted against Brady. ECF No. 19 (emphasis omitted) [hereinafter 2nd Resp.]. The Court has considered both documents in evaluating Brady's Motion to Dismiss.

King argues that LISD and/or Brady are not entitled to immunity. 1st Resp. 5–6, 12–13; 2nd Resp. 3. But King does not dispute that Brady did not serve as her attorney. 1st Resp. 6 ("The Plaintiff had no prior notice that the Lubbock ISD Trustee was an attorney."). King further contends that LISD and/or Brady committed a knowing breach of contract, thereby giving rise to a viable DTPA claim. *See id.* at 5–12.

In reply, Brady addresses both of King's filings. Reply 1–2, ECF No. 21. Brady asserts that once he "filed the motion to dismiss for lack of subject-matter jurisdiction, [King] had the burden of establishing the [C]ourt's subject-matter jurisdiction over the dispute." *Id.* at 2 (citation omitted). In Brady's view, King has not met her burden, and the Court must therefore dismiss her malpractice claim. *Id.* at 2–3. Brady also reiterates that King has not pleaded sufficient facts to support a plausible malpractice or DTPA claim. *Id.* at 3. For these reasons, Brady asks the Court to dismiss all claims against him with prejudice. *Id.* at 5.

5

## II. <u>Legal Standards</u>

### A. Motion to Dismiss under Rule 12(b)(1)

Rule 12(b)(1) authorizes a party to seek dismissal due to a lack of subject-matter jurisdiction. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation omitted). The party asserting jurisdiction bears the burden of demonstrating its existence. *Shaikh v. Tex. A&M Coll. of Med.*, 739 F. App'x 215, 217 (5th Cir. 2018) (per curiam) (citation omitted). "A court may dismiss under Rule 12(b)(1) on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.* at 217–18 (citation and internal quotation marks omitted). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Id.* at 218 (citation omitted).

### B. Motion to Dismiss under Rule 12(b)(6)

To survive a Rule 12(b)(6) motion, a plaintiff must allege sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering 12(b)(6) motions, courts must accept well-pleaded facts (not mere conclusory allegations) as true and view them in the light most favorable to the plaintiff. *Twombly*, 550 U.S. at 555 (explaining that a plaintiff must provide "more than labels

6

and conclusions, and a formulaic recitation of the elements of a cause of action will not do"); *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 520 (5th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678) (stating that courts accept all well-pleaded facts as true, but "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements' cannot establish facial plausibility"). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (internal citations omitted). "The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

### III. Discussion

#### A. The Court does not understand King's assertions as alleging individual capacity claims against Brady.

Individual capacity "suits seek to impose personal liability upon a government official." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). "On the merits, to establish *personal* liability . . . , it is enough to show that the official . . . caused the" violation of law. *Id.* at 166. Official capacity suits, on the other hand, "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Id.* at 165–66 (quoting *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 n.55 (1978)); *see Tex. A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 844 (Tex. 2007) ("A suit against a state official in his official capacity 'is *not* a suit against the official personally, for the real party in interest is the entity.'" (quoting *Graham*, 473 U.S. at 166)).

"When it comes to defenses to liability, an official in a personal-capacity action may, depending on his position, be able to assert personal immunity defenses, such as objectively

7

reasonable reliance on existing law"—e.g., qualified immunity. *Graham*, 473 U.S. at 166–67. But "[t]he only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, *qua* entity, may possess, such as the Eleventh Amendment." *Id.* at 167.

"If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under [the Texas Tort Claims Act (TTCA)] against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only." TEX. CIV. PRAC. & REM. CODE § 101.106(f). "The scope-of-employment inquiry under section 101.106(f) focuses on whether the employee was doing his job, not the quality of the job performance." *Garza v. Harrison*, 574 S.W.3d 389, 394 (Tex. 2019). "Even if work is performed wrongly or negligently, the inquiry is satisfied if, when viewed objectively, a connection exists between the employee's job duties and the alleged tortious conduct." *Id.* (internal quotation marks, brackets, and citation omitted).

As to claims outside the TTCA, when a plaintiff fails to identify the capacity in which she is suing a defendant, a court must "examine the allegations in the complaint . . . and the course of proceedings." *Robinson v. Hunt Cnty.*, 921 F.3d 440, 446 (5th Cir. 2019) (internal quotation marks, brackets, and citations omitted). Considering the styling of defendant's name, the conduct alleged, and the type of damages sought may all help determine the capacity in which a defendant is sued. *Dillon v. Jefferson Cnty. Sheriff's Dep't*, 973 F. Supp. 628, 632 (E.D. Tex. 1997); *see White v. Underwood*, No. 3:18-cv-701-N-BN, 2019 WL 2719353, at *2 (N.D. Tex. May 17, 2019) (explaining that in determining capacity, courts consider "whether the plaintiff alleges that the defendant acted in accordance with a governmental policy or custom, or the . . . indicia of such a policy or custom on the face of the complaint, and a plaintiff's request

8

for compensatory or punitive damages, since such relief is unavailable in official capacity suits" (internal quotation marks and citation omitted)).

King asserts, *inter alia*, a legal malpractice claim against Brady, which is a tort claim. *Willis v. Maverick*, 760 S.W.2d 642, 644 (Tex. 1988) ("A cause of action for legal malpractice is in the nature of a tort . . . ."). She does not plead any facts showing that Brady acted outside the scope of his employment. *See* Compl. 1–17.

Moreover, King sues Brady based on his position as president of the LISD Board of Trustees, which is indicative of an official capacity suit. *Id.* at 1. But she alleges he violated the DTPA (*id.* at 8), and although she does not seek specific (or any) damages in her Complaint, she apparently wants monetary damages, including punitive damages—factors that support a suit against Brady in his individual capacity. 2nd Resp. 4. King did not, however, dispute in her responses Brady's assertion that King is making claims against him only in his official capacity. Mot. 7; *see* ECF Nos. 18, 19. Moreover, her responses indicate that she intends to sue LISD and merely names the other Defendants in their official capacities based on their purported actions on behalf of LISD. *See, e.g.*, 1st Resp. 2 (contending that "The Lubbock ISD" committed legal malpractice and violated the DTPA (emphasis omitted)), 6 (discussing an alleged breach of contract by LISD, based on Brady's signature on contracts between 2019 and 2023),[5] 13 (arguing that she "has established the public school, Lubbock ISD – the Defendants," are liable "for all discrimination under," *inter alia*, the DTPA); 2nd Resp. 3 ("The Plaintiff has filed a suit against Lubbock ISD (Dr. Kathy Rollo, Maximilian Flores, Rick Rodriguez, and Zach Brady)." (emphasis omitted)), 4 (stating that she "is suing the Lubbock ISD (the Defendants) for $7,000,000" (emphasis omitted)).

---

[5] The Court notes, however, that while King's Complaint raises a breach of contract claim, she does not specify against which defendant she asserts this claim. Compl. 9.

The undersigned concludes, after considering King's Complaint and responses, that she has only sued Brady in his official capacity. The Court reaches this conclusion based on the following: (1) Brady is named in his position as president of the LISD Board of Trustees based on actions taken in the scope of his employment; (2) King does not seek monetary damages *in her Complaint*; (3) King's responses reflect that she only intends to sue LISD based on the actions of its employees taken in their official capacities; and (4) she does not challenge Brady's assertion that she brings only official capacity claims. *See, e.g., United States ex rel. Adrian v. Regents of Univ. of Cal.*, 363 F.3d 398, 402–03 (5th Cir. 2004) (holding "employees were only named in their official capacities," where plaintiff "never challenged [defendants'] assertion" that they were named only in their official capacity); *Edinburg Consol. Indep. Sch. Dist. v. Smith*, Nos. 13–16–00253–CV, 13–16–00254–CV, 2016 WL 3068119, at *10 (Tex. App.—Corpus Christi May 26, 2016, no pet.) (observing plaintiffs "made the same allegations against [school district] that they did against [employees] . . . , and . . . sued [school district] for the same claims, suggesting that plaintiffs sued [individuals] solely in their official capacities" under TTCA); *Spease v. Cooper*, No. 1:12–CV–371, 2014 WL 526142, at *5 (E.D. Tex. Feb. 4, 2014) (concluding plaintiffs had brought suit against defendants in their official capacity, where plaintiffs did not challenge defendants' assertion in their motion to dismiss, only named individuals in the "Defendants section of the [c]omplaint," and asserted the same claims against all defendants (internal quotation marks omitted)); *see also Robinson*, 921 F.3d at 446 ("A district court considering a motion to dismiss is not obligated to imagine potential claims that a plaintiff has not raised.").

## B. The Court does not possess jurisdiction over King's claims against Brady.

Brady asserts that the Court lacks subject-matter jurisdiction over King's legal malpractice claim because Texas has not waived immunity for state tort claims against a school district for such claims.[6] Mot. 4; Reply 2–3. The Court agrees and further finds King's DTPA claim is barred for the same reason.[7]

Under Texas law, school districts are considered "political subdivisions" of the State. *San Antonio Indep. Sch. Dist. v. McKinney*, 936 S.W.2d 279, 283 (Tex. 1996) (citing TEX. CIV. PRAC. & REM. CODE § 101.001(2)(A)–(B)); *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003). Political subdivisions are entitled to governmental immunity, which protects them "from lawsuits and liability for money damages." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 & n.2 (Tex. 2008); *see Tercero v. Tex. Southmost Coll. Dist.*, 989 F.3d 291, 297 (5th Cir. 2021) ("In Texas, governmental immunity has two components: immunity from liability, which bars enforcement of a judgment against a governmental entity, and immunity from suit, which bars suit against the entity altogether." (quoting *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006))). "Governmental immunity from suit defeats a trial court's jurisdiction." *Tercero*, 989 F.3d at 297 (brackets and citation omitted). "A political subdivision enjoys governmental immunity from suit to the extent that immunity has not been abrogated by the Legislature." *Id.* (citation omitted). "Immunity is waived only by clear and unambiguous language." *Id.* (brackets and citation omitted).

---

[6] Brady did not move to dismiss the claims against him under TEX. CIV. PRAC. & REM. CODE § 101.106(f).

[7] Brady appears to seek dismissal under Rule 12(b)(1) only as to King's legal malpractice claim. *See* Mot. 5–7 (asserting that King's malpractice claim does not involve a motor vehicle and is therefore barred by governmental immunity, but making no similar assertion as to King's DTPA claim); Reply 2–3 (alleging that the Court lacks jurisdiction over King's legal malpractice claim). Nevertheless, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3). As discussed herein, the undersigned concludes King's DTPA claim is likewise barred by governmental immunity. Thus, Brady's failure to expressly seek dismissal on that ground does not prevent the Court from raising it sua sponte.

11

"The [TTCA] provides a limited waiver of immunity for certain suits against governmental entities and caps recoverable damages."[8] *Mission*, 253 S.W.3d at 655 (citing TEX. CIV. PRAC. & REM. CODE § 101.023). In the case of school districts, the TTCA waives immunity "only [for] tort claims involving the use or operation of motor vehicles." *Id.* at 656 (citing TEX. CIV. PRAC. & REM. CODE § 101.051). Moreover, "[t]he DTPA does not contain the clear and unambiguous language necessary to waive governmental immunity; the Texas Legislature has not consented to suit under the act." *Belmonte v. City of Dallas*, No. 3:19-CV-2656-G-BK, 2021 WL 1903707, at *4 (N.D. Tex. Feb. 9, 2021) (citing *Dallas Cnty. v. Rischon Dev. Corp.*, 242 S.W.3d 90, 95 (Tex. App.—Dallas 2007, pet. denied)), *R. & R. adopted by* 2021 WL 1895244 (N.D. Tex. May 10, 2021); *see City of Wylie v. Taylor*, 362 S.W.3d 855, 864–65 (Tex. App.—Dallas 2012, no pet.) (observing that "[t]he Legislature failed to include governmental entities in the DTPA's definition of 'person,'" thereby rendering plaintiffs' "DTPA claims . . . barred by governmental immunity" and the trial court without jurisdiction to hear them).

Here, King asserts legal malpractice and DTPA claims against Brady in his official capacity, which, as discussed above, amounts to a claim against LISD. *See Franka v. Velasquez*, 332 S.W.3d 367, 382–83 (Tex. 2011) (explaining that "an employee sued in his official capacity has the same governmental immunity, derivatively, as his government employer"); *Gil Ramirez Grp., L.L.C. v. Hous. Indep. Sch. Dist.*, 786 F.3d 400, 416 & n.19 (5th Cir. 2015) (observing that Texas law defines school board trustees as employees (citing TEX. EDUC. CODE § 22.051)). King does not allege the legal malpractice claim involved the use or operation of a vehicle, rendering her claim barred by governmental immunity. *See* Compl. 8. And without express legislative

---

[8] "Because the Tort Claims Act is the only, albeit limited, avenue for common-law recovery against the government, all tort theories alleged against a governmental unit, whether it is sued alone or together with its employees, are assumed to be under the Tort Claims Act for purposes of section 101.106." *Mission*, 253 S.W.3d at 659 (internal quotation marks, brackets, and citation omitted).

12

consent under the DTPA, King cannot bring a DTPA claim against LISD. *Davis v. Collin Cnty. Cmty. Coll. Dist.*, No. 4:09cv309, 2009 WL 3764135, at *3 (E.D. Tex. Nov. 9, 2009).

Because Brady possesses governmental immunity over King's claims, they must be dismissed without prejudice.[9] *See Farshid ex rel. E.K. v. Allen Indep. Sch. Dist. ex rel. Bd. of Trs.*, 688 F. Supp. 3d 391, 398 (E.D. Tex. 2023) (dismissing plaintiff's tort claims against defendants in their official capacities, where plaintiff did not contend the claims "involve[d] the use or operation of motor vehicles"); *Taylor v. El Centro Coll.*, No. 3:21-CV-0999-D, 2022 WL 102611, at *7 n.21 (N.D. Tex. Jan. 10, 2022) (holding that plaintiff's "DTPA claim against the [i]ndividual [d]efendants in their official capacities [wa]s barred by governmental immunity to the extent [plaintiff] [sought] damages" (citing cases for support)); *Sims v. Chatham-Sims*, No. 3:17-cv-3203-L-BT, 2019 WL 3807484, at *3 (N.D. Tex. July 26, 2019) (recommending dismissal of "[p]laintiff's state-law tort claims—including his intentional infliction of emotional distress, conspiracy, and fraud claims, and any other claim in [his] . . . [c]omplaint that could be construed as a state-law tort claim—against" school district because they did not involve use or operation of a motor vehicle), *R. & R. adopted by* 2019 WL 3803671 (N.D. Tex. Aug. 13, 2019).

### C. Granting King leave to amend her claims against Brady would be futile.

Ordinarily, courts should "afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid

---

[9] The Court understands King as seeking only monetary damages—not injunctive or declaratory relief. *See* Compl. 1–17; 2nd Resp. 4. Even if she seeks injunctive or declaratory relief, however, the Court lacks jurisdiction over her claims. *See, e.g., Three Legged Monkey, L.P. v. City of El Paso*, No. EP–14–CV–00260–FM, 2015 WL 12916439, at *4, *10 (W.D. Tex. Jan. 8, 2015) (concluding TTCA did not waive immunity for state tort claims against defendants in their official capacity, including claims for injunctive relief); *Brown v. Daniels*, No. 05-20-00579-CV, 2021 WL 1997060, at *21 (Tex. App.—Dallas May 19, 2021, no pet.) ("Because the only measure of liability provided by the TTCA is money damages, the TTCA does not waive sovereign immunity for injunctive relief."). And for the reasons discussed in Section III.C., amendment would be futile.

dismissal." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

Initially, the Court observes that King has not requested leave to amend her claims against Brady.[10] *See* ECF Nos. 18, 19. On this basis alone the Court may deny the right to amend. *See, e.g., Khoury v. Thota*, No. 20-20578, 2021 WL 3919248, at *4–5 (5th Cir. Sept. 1, 2021) (per curiam) (concluding "district court did not abuse its discretion by failing to give [plaintiff] leave to amend his complaint," where plaintiff did not specifically request leave and he did not "specify how he would amend his complaint to address its defects"); *U.S. ex rel. Jamison v. Del-Jen, Inc.*, 747 F. App'x 216, 221 (5th Cir. 2018) (per curiam) ("Rule 15(a) provides that 'leave to amend shall be freely given when justice so requires,' but only 'applies where plaintiffs 'expressly requested' to amend.'" (footnote and citations omitted)).

Even if King had asked for leave to amend, however, the undersigned would recommend denial. This is because amendment would be futile as to the claims against Brady. In accordance with the authority discussed above, King cannot cure the pleading deficiencies with respect to her official capacity claims under the DTPA and for legal malpractice, regardless of the type of relief she seeks. *See Belmonte*, 2021 WL 1903707, at *4 (concluding same as to plaintiff's DTPA claim against governmental entity). Moreover, King has named LISD as a Defendant. Compl. 1. Thus, King's official capacity claims against Brady are redundant of her claims against LISD, and she will suffer no prejudice through his dismissal. *See, e.g., Sanders-Burns v. City of Plano*, 594 F.3d 366, 373 (5th Cir. 2010) (observing that any claims against the city "would render any official capacity claim against [officer] redundant"); *Goad v. Lyde*, No.

---

[10] Since filing her responses, King has attempted to supplement or amend her Complaint. *See, e.g.*, ECF Nos. 27, 32. The Court unfiled the first document because King did not seek leave to file it. ECF No. 29. Of even date herewith, the Court has unfiled King's second attempted supplement for the same reason. In both documents, King does not expressly try to amend her claims as to Brady. ECF Nos. 27, 32.

7:23-cv-00063-O, 2024 WL 1078225, at *3 (N.D. Tex. Mar. 12, 2024) (dismissing official capacity claims against sheriff as redundant of claims against the county).

Finally, to the extent King intended to assert individual capacity claims against Brady, they would fail for the reasons proffered in Brady's Motion and Reply. First, King has pleaded no facts showing an attorney-client relationship between her and Brady. *See* Compl. 8. To the contrary, King alleges she was not aware—at the time of the incident—that Brady was an attorney. *Id.* And King acknowledges that Brady was acting in his capacity as president of the LISD Board of Trustees—not as her attorney. *Id.* Thus, any individual capacity claim against Brady for legal malpractice under Texas law would fail. *See, e.g., Target Strike, Inc. v. Strasburger & Price, L.L.P.*, No. 05-18-00434-CV, 2018 WL 6040022, at *5 (Tex. App.—Dallas Nov. 19, 2018, pet. denied) (explaining that an attorney-client relationship can be created through an express or implied agreement, but in either scenario, "there must be evidence *both* parties intended to create an attorney-client relationship"); *Border Demolition & Env't, Inc. v. Pineda*, 535 S.W.3d 140, 152 (Tex. App.—El Paso 2017, no pet.) ("Evidence that a client harbored a mistaken, subjective belief of a formed relationship is insufficient, standing alone, to establish that the attorney had a duty to represent the client; there 'must be some manifestation that both parties intended to create' the relationship." (citation omitted)); *First Nat'l Bank of Durant v. Trans Terra Corp. Int'l*, 142 F.3d 802, 806–07 (5th Cir. 1998) ("Under Texas law, there is no attorney-client relationship absent a showing of privity of contract, and an attorney owes no professional duty to a third party or non-client." (citation omitted)).

Similarly, King has failed to plead facts stating a plausible DTPA claim against Brady, and she has not shown that she can cure such defects. King does not allege she was a consumer, nor has she established she sought or received goods or services from Brady—two necessary

elements of a DTPA claim. *See* Compl. 8; *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 768 (5th Cir. 2016) ("A claim under the DTPA has three elements: (1) the plaintiff is a consumer, (2) the defendant engaged in false, misleading, or deceptive acts, and (3) these acts constituted a producing cause of the consumer's damages." (internal quotation marks and citation omitted)). Any DTPA claim against Brady in his individual capacity is therefore non-viable.[11] *See, e.g., id.* ("To qualify as a consumer, the plaintiff must have sought or acquired goods or services by purchase or lease, and those goods or services . . . must form the basis of the complaint." (internal quotation marks and citation omitted)); *Campbell v. Racetrac Petroleum, Inc.*, No. 3:21-CV-0516-B, 2021 WL 4552253, at *3 (N.D. Tex. Oct. 5, 2021) ("The key inquiry in determining consumer status is whether the goods or services regarding which the plaintiff claims an injury were an objective of a qualifying transaction or 'merely incidental to it.'" (internal quotation marks and citation omitted)).

Because King has not sought leave to amend her claims against Brady, and she has failed to show that she can cure the deficiencies, the undersigned concludes that King should not be granted leave to amend her claims against Brady, regardless of the capacity in which she sues him.

### IV.  Recommendation

For the foregoing reasons, the undersigned recommends that the United States District Judge **GRANT** Brady's Motion to Dismiss under Rule 12(b)(1) and **DISMISS without**

---

[11] King appears to contend in her responses that LISD and/or Brady knowingly breached her contract, which supports a DTPA claim. *See, e.g.*, 1st Resp. 5–8. But King simply mentions breach of contract as a cause of action in her Complaint (*see* Compl. 9), and "[t]he Texas Supreme Court has made clear that '[a]n allegation of a mere breach of contract, without more, does not constitute a false, misleading or deceptive act in violation of the DTPA.'" *Hernandez v. Ikon Off. Sols., Inc.*, 306 F. App'x 180, 182 (5th Cir. 2009) (per curiam) (quoting *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 304 (Tex. 2006)). "Similarly, 'the usual view is that mere breach of contract is not fraud and that it may not be evidence of fraud.'" *Chapa*, 212 S.W.3d at 304 (citation omitted).

**prejudice** all claims asserted against Brady. Considering this recommendation, the undersigned further recommends the district judge **DENY as moot** Brady's Rule 12(b)(6) motion.

## V. Right To Object

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2016); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding, conclusion, or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: July 8, 2024.

_____
D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE